

U.S. Department of Justice

United States Attorney
Eastern District of New York

ADG  
F. #2023R00502

271 Cadman Plaza East  
Brooklyn, New York 11201

January 17, 2025

By ECF

The Honorable Nicholas G. Garaufis  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:   United States v. Hector Medina, Jr.  
              Criminal Docket No. 24 CR 248 (NGG)

Dear Judge Garaufis:

      The government respectfully submits this letter in advance of the sentencing hearing of the defendant Hector Medina, Jr., which is scheduled for January 22, 2025, at 12:30 p.m. On September 5, 2024, the defendant pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"), before the Court, to a one-count Information charging him with devising a scheme to defraud a former Congressional representative for New York's Third Congressional District ("Individual-1"), in violation of 18 U.S.C. § 1343. (See Presentence Investigation Report, prepared October 31, 2024 ("PSR") ¶ 1). For the reasons set forth below, the government respectfully submits that a significant custodial sentence is appropriate.

    I.   Background

        A.   Offense Conduct

      In the summer of 2023, the Federal Bureau of Investigation ("FBI") began investigating the defendant, a resident of El Paso, Texas, for efforts to defraud publicly known persons, including but not limited to Individual-1, who were, or whose family members were, facing criminal exposure, by falsely promising such persons that the defendant could cause their criminal exposure to disappear in exchange for large sums of money. (PSR ¶¶ 3-9).[1] Between July and August 2023, the defendant, who falsely identified himself as "Michael Sotto," sent multiple text messages, videos and images from his cellphone in Texas to Individual-1's

---

[1] At the time, Individual-1 had been indicted by a federal grand jury sitting in the Eastern District of New York with multiple criminal felonies. He has since been convicted.

cellphone in Washington, D.C. and New York falsely claiming that the defendant could arrange for the criminal charges against Individual-1 to be dropped and/or for evidence against Individual-1 to be destroyed in exchange for money. (PSR ¶¶ 3-6).

For example, in early July 2023, the defendant sent Individual-1 a video stating in sum and substance:

> "Hi, good morning, [Individual-1]. My name is Mike Soto. You don't know me but, I wanted you to see a face and trust me on what I'm about to tell you. I work with prosecutors and, uh, judges throughout the United States and I want to give you the opportunity to offer my services. I was contacted by some people to reach out to you and see if you wanted to cut a deal. Uh, this only stands for today. If you're interested, I can get everything dropped, evidence that is on you removed, disappeared. Reach out to me if you're interested. It's simple yes or no. Thank you."[2]

Shortly thereafter, the defendant sent Individual-1 the following text messages:

"Is this [Individual-1]"

"?"

"Do I have the wrong number?"

"[Individual-1]?"

"Just please tell me if I have the wrong number"

"So I can look else where" [sic]

"[Individual-1]?"

"I can get all the charges dropped"

"All I need is for you or someone to wire 900k to Routing number [ending in 271]"

"Account number [ending in 791]  once this is done I'll take care of the rest"

"I'm the real deal don't let doubt come"

"In the way"

"Of you getting this dismissed"

---

[2] Of course, no such service described by the defendant exists. (PSR ¶ 4).

2

(See PSR ¶ 5). Throughout mid-July 2023, the defendant continued to send Individual-1 messages attempting to solicit a response and requesting bribe money. (See PSR ¶ 5).

In early August 2023, the defendant sent a picture of a fraudulent New Mexico driver's license (the "Fraudulent License"), which he fabricated, to Individual-1, as well as a video of the defendant speaking in which he stated in sum and substance:

> "Hi. Good morning. I just sent you a picture of my ID. I just want to know if I'm contacting [Individual-1] or not. If it is Individual-1, uh, reach out to me. If it's not, you know it's – disregard this message or at least tell me that it's not so I'm not spinning my wheels here. Thank you very much."

(See PSR ¶ 5). Among other information, the Fraudulent License contained a false driver's license number, the alias Michael Soto, and an address in Hobbs, New Mexico. However, the photograph on the Fraudulent License was a true photograph of the defendant. (See PSR ¶ 6).

In August 2023, the defendant sent the following text messages to Individual-1:

"I've been trying to look for [Individual-1] for over a month is this him?"

"I know you see my messages"

"[Individual-1] are you interested"

"In my services"

"Good morning [Individual-1]"

"Please message me back thank you"

"Can you respond"

"[listing address previously associated with Individual-1]?"

Shortly thereafter, the defendant sent another video to Individual-1 of him speaking, in which the defendant stated in sum and substance:

> "Look, if this isn't uh, [Individual-1], that's fine. But, if it is, I'm here to help you. I wanna – I'm on your team. If you don't want the help, at least connect me with people that do. Um, you know, I'm really good at what I do. I am a genius. I am a wizard when it comes to things like this. So, take advantage of the situation and let me know. Thank you."

(PSR ¶ 6).

In addition to Individual-1, the defendant attempted to defraud other well-known persons using substantially the same false representations. For example, on June 2, 2023, the

3

defendant sent a text message to a publicly known actor who had been convicted of felonies in California in May 2023 ("Individual-2"). (PSR ¶ 7). Specifically, the defendant stated:

> "Good morning [Individual-2], my name is Mike and I'm working with the people affiliated with your case. I can get the case thrown out or a reduced sentence very low but my people are asking for a $1 million dollar fee. Let me know if you're interested, please text back no lawyers no attorney no police because you and I doing business. Otherwise best of luck. I can help. Today."

(PSR ¶ 7).

On June 5, 2023, the defendant sent a message to the then-spouse of Individual-2. He stated:

> "[Spouse's name] my name is Mike and I offer a unique opportunity. I can get your husband [Individual-2] out of jail, or at least time serve by his next court date, I work with people and the court prosecutors judges. Now this has to stay between us. If you're interested, there is a fee. Nobody else needs to get involved. Thank you. Have a good day."

Later that day, the defendant sent an additional message to the then-spouse of Individual-2 stating in sum and substance and in part that he cannot wait long for a decision and that he "definitely could help your husband." (PSR ¶ 7).

As another example, on June 16, 2023, the defendant sent a message to a publicly known musician who had been arrested in June 2023 ("Individual-3"), stating:

> "[Individual-3] my name is Mike Soto I work for very powerful people and prosecutor start [sic] the US we can get your charges dropped. Let me know if you're interested I'm doing business with you not your attorneys or anyone else."

(PSR ¶ 9).

On June 14, 2023, the defendant sent a message to a professional athlete ("Individual-4"), whose family member had been arrested in May 2023, stating:

> "Hey [Individual-4] I know you don't know me my name is Mike Soto I offer a unique service at work with very important people. As far as your [family member]'s case goes, I can get a [sic] tossed out by the prosecutors. There is a fee for this. Let me know if you're interested I'm dealing with you and you only no lawyers no police no anybody."

(PSR ¶ 8).

On December 14, 2023, the FBI conducted a voluntary interview of the defendant. The defendant admitted, in sum and substance and in part, that: (1) he sent the above-described messages, images and videos to Individual-1; (2) he searched the Internet for

4

individuals who were in trouble believing that they would be easy targets for his scheme; (3) the purpose of the scheme was to obtain their money because he owed over $100,000 in gambling debts; and (4) he discarded the cellphone he used to send the various messages because he knew what he did was wrong and wanted to get rid of incriminating evidence. (PSR ¶ 10). The government is not aware of any targeted individuals having actually sent money to the defendant as a result of his fraudulent efforts.

B. Procedural History

On March 6, 2024, the defendant was charged with wire fraud by a federal complaint issued in the Eastern District of New York and was arrested in El Paso, Texas. On September 5, 2024, the defendant waived indictment and pleaded guilty to an information charging the same offense. The government understands from Pretrial Services that the defendant has complied with the conditions of his release.

C. Criminal History

The defendant has a criminal record, including convictions for theft and fraudulent activity. They include:

- On July 17, 2024, the defendant was convicted in El Paso County Court of theft of property between $2,500 and $30,000 dollars, a felony in violation of the Texas Penal Code, and was sentenced to a suspended two-year custodial sentence, probation, restitution and a fine. Specifically, according to court records, in 2022, the defendant unlawfully appropriated money from an El Paso company on two occasions.

- On June 28, 2023, the defendant was convicted in El Paso County Court of the fraudulent securing of document execution between $20,000 and $100,000 dollars, a felony in violation of Texas Penal Code, and was sentenced to probation.[3] The defendant committed the instant federal offense while on probation. He was also ordered to pay $27,290.67 in restitution.

- On December 2, 2016, the defendant was convicted in El Paso County Court of theft of property between $2,500 and $30,000 dollars, a felony in violation of the Texas Penal Code, and was sentenced to probation. The defendant committed the instant federal offense while on probation for this state crime. He was also ordered to pay $301,481 in restitution.

---

[3] According to Texas Penal Code, a person violates the fraudulent securing of document execution where, among other things, he or she causes another person, without that person's effective consent, to sign or execute any document affecting property, service or the pecuniary interest of any person.

- On January 10, 2011, the defendant was convicted in El Paso Municipal Court of possessing prohibited weapons, a misdemeanor in violation of the Texas Penal Code, and was sentenced to probation.

(PSR ¶¶ 27-31).

II. <u>Sentencing Guidelines</u>

The PSR and Plea Agreement set forth the following calculations, which the government submits are correct:

| | |
|---|---:|
| Base Offense Level (§ 2B.1(a)(1)) | 7 |
| Plus: Intended Loss Between $1.5 million and $3.5 million (§ 2B.1(b)(1)(I)) | +16 |
| Less: Acceptance of Responsibility (§§ 3E1.1) | <u>-3</u> |
| Total Offense Level: | <u>20</u> |

(PSR ¶¶ 15-25). Based on the defendant being in Criminal History Category II, the defendant's advisory United States Sentencing Guidelines ("Guidelines") range is 37 to 46 months' imprisonment. (PSR ¶¶ 71-72). In the Plea Agreement, the defendant stipulated to these Guidelines calculations.

III. <u>A Substantial Custodial Sentence Is Appropriate</u>

A. <u>Legal Standard</u>

A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 552 U.S. 38, 49 (2007) (citation omitted).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." <u>Id.</u> at 50 (citation and footnote omitted).

Title 18, United States Code, § 3553(a) provides that, in imposing a sentence, a court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the

6

      law, and to provide just punishment for the offense;

   (B)  to afford adequate deterrence to criminal conduct;

   (C)  to protect the public from further crimes of the defendant; [and]

   (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Thus, the Court should first calculate the applicable Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

 B. Section 3553(a) Factors

 The government respectfully submits that a significant custodial sentence is warranted in this case. The defendant's crime is serious. He devised and executed a scheme to defraud well-known figures facing serious criminal liability, including individuals charged in criminal cases brought by the U.S. Department of Justice. The defendant solicited hefty bribes from persons facing criminal charges—persons he understood to have already committed criminal activity—by promising them that he could destroy evidence against them or otherwise obstruct their criminal cases. The government takes seriously any attempted interference into pending cases, especially claims, whether real or fabricated, about destroying evidence or influencing judges or prosecutors.

 While the defendant argues to the Court that he had no ability to do what he claimed, the essence of the crime here was not his ability to actually obstruct justice but to defraud others into believing that he could do so. Indeed, his misrepresentations are central to the fraudulent nature of the scheme. Moreover, the defendant was certainly persistent in his efforts to convince the targets of his scheme that he could deliver on his claims. He contacted not one, but at least five individuals. He did not send one message, but rather multiple messages over the course of several months.

 The defendant also essentially argues that his fraudulent scheme was an ineffective one, that it was too outlandish to successfully deceive any targets of the fraud. But what matters was the defendant's intent and actions, not his acumen as a fraudster. The defendant believed in his fraudulent scheme. He went to great efforts to execute this scheme, locating the private telephone numbers of his targets, using a fraudulent identification with his real photograph to try to persuade those he contacted of his seriousness, contacting one person's spouse and another's family member, on at least one occasion mentioning the individual's home address, and discarding his cellphone to destroy evidence of his efforts. Moreover, as further

7

discussed below, this offense is not the defendant's first fraud scheme. Rather, the defendant has had many contacts with the criminal justice system and has not been deterred from committing new crimes.

Additionally, while there is no evidence that the defendant obtained money from any of the persons he contacted, it does not mean, as the defendant now claims, that the effort could never have succeeded. It is unclear what some individuals facing serious criminal charges and lengthy prison sentences might do.

The defendant's history and characteristics also militate in favor of a substantial custodial sentence. This is not the defendant's first fraud or theft scheme. The defendant's criminal history is replete with his attempts to defraud others. He has now been convicted of such offenses four times in the last decade. Each time, he has suffered minimal consequences and no period of incarceration. Moreover, the defendant committed the instant offense while on probation for two different crimes. To be sure, the defendant here also immediately confessed his crimes to law enforcement authorities, self-surrendered, waived indictment and pleaded guilty at the earliest opportunity. The Court's sentence should also account for those efforts.

Finally, both specific and general deterrence warrant a substantial custodial sentence. As discussed above, it is plain that this defendant will not be deterred by warnings, court supervision or probationary sentences. Such efforts have repeatedly failed. Incarceration is the only punishment that may deter similar conduct in the future and incentivize the defendant to change course. The need for general deterrence is also crucial in this case. A custodial sentence, along with this conviction, will demonstrate that the criminal justice system protects everyone, even those who themselves have committed serious crimes, and that fraudsters cannot attempt to exploit such persons.

IV. Conclusion

For the foregoing reasons, the government respectfully submits that a significant custodial sentence is reasonable in this case.

Respectfully submitted,

CAROLYN POKORNY
*Acting United States Attorney*

By:   /s/ Andrew D. Grubin
Andrew D. Grubin
Assistant U.S. Attorney
(718) 254-6322

cc:   Clerk of the Court (NGG) (by ECF and Email)
All Counsel of Record (by ECF and Email)
Steven S. Guttman, United States Probation Officer (by Email)